LP. Ms. Gifford. Thank you, Your Honor. May it please the Court. This appeal addresses an agreement to settle a number of New York State wage law claims brought on behalf of New York State employees who worked at four catering facility locations across New York State. Of those claims, the service charge claims are the main contention, the largest claims at issue. And the Harbor Links location was the largest catering facility, and the settlement proponents have represented that nearly 40 percent of all the service charges collected came from Harbor Links. May I ask you this? If my understanding is correct, the class period here was from, like, 07 to 13? I believe that's correct. OK. And the club your people worked for changed their contract a year before the other clubs. Is that right? The contract change, yes, came earlier at that location. So, as I understand it, the way the settlement worked out, even though you probably could not have recovered for those employees in that year after your club contract had been changed, you got the same percentage as everybody else did. I disagree on a couple of those points, Your Honor. First of all, with respect to the recovery, in the final approval proceedings, the total recovery that was referenced in the proponents' papers and is adopted by the Court did not include any damages based on the time period after the change in the contract language. And the settlement proponents specifically noted in their chart that for each club their damages calculations went up until the date of the contract change. So those damages calculations took into account only up until the date of the contract change for each club. So that figure was already accounted for in those numbers. But where we also would respectfully disagree is we believe the Harbor Links employees did have viable claims even after that contract change. And that's based... We would have had a harder case, though, would you not? It may have been a more challenging case at that point, but that doesn't mean it was zero damages, which is the position that the settlement proponents took and the remain strong because the New York State Department of Labor regulations very specifically provide that the employers shall include in the contract and, they use the word and, on any menu and bill listing prices the specified language clarifying to the customer that the service charge is not going to be remitted to the employees. And in fact, the objectors submitted in the record documents showing that even after that contract language change happened at Harbor Links, we provide a number of documents including invoices, lunch menus, event detail sheets, which have the service charge, the 20% service charge represented in those documents but do not include the requisite language notifying the customer this is not going to the employees. It looks like there's widespread support among class members including Harbor Links class members for the settlement, Judge Lynn approved. I mean, just looking through all this in the history, it really looks to me that this is a dispute between the lawyers because multiple competing suits were filed and, of course, each lawyer wants to be the one who gets the settlement and gets money for the work they did. And it just, but it just seems with this fight among the lawyers that the class members are, you know, all this delay is being caused and, I mean, tell me why I'm not seeing it correctly. Well, what I would note in connection with those class member statements, if you look at the history of class counsel's communications and representations regarding their communications with the class members, the first settlement was reached in 2016. They applied for final approval and at that time made a representation that they had interviewed over 20 employees in investigating those claims. Presumably that would have included the eight main plaintiffs currently in the action as well as plaintiff law who's opted out. So they had interviewed 20 workers at the time they reached the settlement agreement, signed off, sought final approval on it first time. After that was reversed and sent back, they, the stipulations, the representations are that the second settlement is really the same as the first settlement. The defendants added some additional money. Class counsel agreed to take a slightly smaller percentage. But the terms of the agreement are the same. They again brought that to the court for the seeking approval. And in May of 2018, the representation at that time was they'd interviewed over 40 employees. So we're still, we're at this point now, we have the second agreement. Let's look at it another way. How many are objecting? I think two. How many objectors are there? There are two objectors. Two objectors. I would also note we're, you know, um. Who filed the first suit? I'm talking state and federal. Every suit out there, who, who filed the first one? The first state, um, court action was brought by Diane, I forget the first name, but Ms. Law. Um, that was the first. In New York State federal action. Correct. Um, but it was not until the eve of the final approval hearing in this matter that the class counsel represented, they had then spoken to hundreds of employees and began bringing in these statements. And I would just note that I think those need to be looked at carefully because at that point, is the goal truly to assess these claims to determine what is a fair and reasonable outcome for these employees? Or at that point is the goal to drum up support for a settlement that's already been agreed to? Because they've already filed and received preliminary approval. Are they really going to come back and say, oh, now we talked to a hundred employees. Actually, these claims are much stronger than we thought. I mean, wouldn't it be significant that you didn't have any objectors except the two? I mean, if you talk to more and more people and you don't see any more dissent, I mean. I think, Your Honor, there's a question as to whether and how those employees understand their rights, whether and how they understand the claims, whether these hourly banquet workers in upstate New York and Long Island have the wherewithal to object to claims that have been brought in the Southern District of Texas and now are here before the Fifth Circuit. I think there are a lot of reasons to think that employees would not have the resources necessary to be able to object. But it's the location, madam. In this day and age, I mean, they're not going to the But if class counsel is calling you and telling you this is a great deal and you should sign up and you're going to get your money right away, the question becomes whether you have the knowledge and the understanding of the law to know what you're giving up by participating in that. And I think another issue where the record below was simply insufficient to support the finding, if we look at the representations made regarding the amounts of damage as an example, the representations made to the district court as to what are the total damages changed over time, and there's been no explanation or justification for that. And given that if we don't Perfection is not the standard. I mean, these are complicated settlements. So what, it might not be perfect, but what, what is legal error? What's your best legal error you can identify? Well, one, Your Honor, I would point to, and I agree perfection is not the standard, but when you look at the total service charge damages allocated to harbor links, the difference between what was represented to the court in connection with the first settlement and what was represented in connection with the settlement, second settlement, is a drop of approximately $400,000. And that was never explained. That was never justified. I would point to, if you look at the record on appeal, pages 680 to 681 are where the representations were made to the district court in connection with the first, first settlement. And those numbers, as we set out in our brief, when you do the calculations reflect service charge claims at harbor links of $1.5 million. Now they're claiming those damages are $1.1 million and in Apelli's brief, they, they seem to claim that they never made the representation that it was $1.5 million. So we have a fairly significant drop in the damages. I mean, 1.5 to 1.1 is, is a significant percentage that's not been adequately explained. And on that record, the district court, no court could make a, the rigorous analysis required to determine the likelihood of success and the range of possible recovery, and then to determine is this a fair and adequate resolution of those damages? We have essentially $400,000 in damages that, that seem to have, have disappeared without explanation. We agree with you, the settlement should not have been approved. It goes back. Is your goal, you want more for harbor links or you want harbor links employees to be carved out? I think the appropriate approach would be for harbor links employees to proceed on their own. I think both, you know, both. Again, that goes back to my first question, because that would get, that would be a separate lawsuit, which would be an award of fees to different attorneys. I, I think either way, when you don't have the rigorous analysis required to satisfy each of the legal standards relevant here, the court can't, um, the district court below can't have made, properly found that the, um, standards were met and, and therefore we don't have that protection. Is this a fair, reasonable, adequate settlement for the class members? Did you raise the discrepancy within the district court? Yes. What did you get back? What was the response? I don't believe there was a specific response. There, there, we, we noted in a number of instances, times when the district court would note that something was missing and ask for additional information. In our view, what the district court got back was not sufficient. Um, you know, one of those instances I would note, um, the district court had asked at one point, um, about the percentage of recovery in the pre-2011 period, that was during the final approval hearing, and, and that information was not provided to the court. And the frustrating thing about all of this, particularly when it comes to the numbers and damages, these are things that are imminently knowable. They, the Plaintiffs' Council have represented that they created sophisticated spreadsheets. Those have not been entered in the record. Instead, we have these changing numbers, percentages, shifting amounts that at best are confusing and don't allow the district court to make the proper findings with respect to the damages and the range of possible recovery. And that's where you see, then, the district court not only adopting damages calculations that wholly omit that period of time after the contract change, but then using that same theory that our contract change at Harbor Links claims and say, well, even though they're stronger in other respects, because the district court did recognize that the contract language argument was stronger on behalf of Harbor Links, devalued again on the basis of damages that had already been, for a period of time, calculated as zero. So all those are items that I think could and should be fully and fairly resolved to make sure that these settlement amounts on behalf of these employees are fair and adequate as required. And just briefly, as I know my time is running short, similarly, on the issues of commonality and typicality, the record below is simply insufficient to support the findings. With respect to the claims other than service charge claims, there is nothing in the record to tell you what were those policies, how are they common, how were they factually common across these four different locations. The proponents of the settlement seem to be saying, well, they're all violations of the same law. Duke's makes clear that's not sufficient. There's nothing in the record they can point to to tell you what was the policy, what was the practice, how was it common. Can I read the brief right that they paid, like, 93% of the non-service charge claims? That's what it says, yes. But again, if you don't have commonality and typicality, it cannot be certified as a class. Similarly, with respect to the service charge claims, there were prior admissions that the practices changed at different times in different ways. The district court recognized that only the Harbor Links contract said grant rate with a percentage on the front page of the contract. And additionally, again, we've pointed out the documents at Harbor Links, after the contract changed, there was a violation of the New York State regulations which required that same language on menus and other billing documents. It wasn't there. We have also, in connection with the service charge claims, the district court saying, well, there's commonality because there are four clubs here and the service charge claims happened at three locations. That's not a basis to find commonality across all four locations when you're specifically saying that one location is different. So, again, our view on this record is that we simply don't have a sufficiently developed record to allow the district court to meet its rigorous analysis, which is a heightened requirement in the context of certification  Total employees were involved here? I want to say I believe it was over 400, maybe around that number. Correct. They all agreed except for two? Well, I'm not sure they all agreed except for two. One has opted out as well. Diane, or Ms. Law, who was the plaintiff who filed the first state court action, has opted out. Additionally, the plaintiff's counsel may have additional information regarding anyone who didn't opt in on the FLSA claims. But, again, I think the employees are at a disadvantage in terms of information and agency in terms of being able to assert whether they think this is... You want us to send it back. There needs to be more time to develop the record for Class Cert, have another Class Cert approval, then if that gets approved, have another settlement hearing, then maybe another appeal, and then maybe in three or four years someone might start to see a few dollars? Well, I think, again, there are a number of ways this could be approached. The first question is, is this a sufficient record? Is this a sufficient, you know, finding by the district court below? Absent that, it doesn't need to go back. Procedurally, there are a number of ways that could be approached. At the time our action in the Eastern District of New York was stayed, it was teed up for a motion for Class Certification, so I think it could proceed separately and, you know, that could be a way to move things along as well. Thank you. All right. Thank you, Ms. Cooper. All right. I'm going to let you pronounce your name for us because I'm liable to get it messed up. Good morning. May it please the Court. My name is Inessa Hewitt, and I am counsel for like Your Honors have specifically said just now. This is a professionally mediated settlement that has a 92 percent participation rate from the Harbor Links workers. These Harbor Links people that the objectors are trying to represent here, they have submitted sworn declarations explicitly rejecting their representation, saying that they do not want anything to do with these objectors and their lawyers, they are not serving their best interests. They specifically pleaded that they not file this appeal, and they're saying that their continued conduct is detrimental to them. There was over three hours of oral argument in this case where the Court rigorously analyzed the Rule 23 factors and then issued two decisions totaling over 40 pages where she carefully considered all the factors and then issued a decision approving the settlement. Now, objectors here have raised three issues that I would like to address. One is they claim that we have not satisfied commonality. Second, they claim that the settlement does not properly value all of these claims and that the Court has somehow not understood this. And third, they've claimed in their papers that there's some sort of collusion going on here. Now, I'd like to briefly just address one specific issue that is now the fourth time that counsel has brought this up, the distinction between the damages being 1.5 versus 1.1 and overall being 3.8 versus 3.3 or something like that. I don't remember what the specific numbers are. This is the fourth time it's being brought up and the third time that it's being corrected for the record in every single proceeding that we've previously had. The 1.5 figure is for all service charge claims that was even rendered after the contract language was changed. I'll address this later on more specifically. I just wanted to flag it right now. The 1.1 language is for buckets 1 and 2 before the contract language was changed. This is not a shifting rationale. This is not some mystery that is being uncovered. This is completely clearly in the record that has been brought up over and over and over again with even in bold as footnotes saying that this is not something new. Now, going back to the three issues we've discussed, commonality, the value of the settlement, and collusion, I'd like to start with the first one with respect to commonality. Objectors in their papers are attempting to hold us to a standard for commonality that is a trial-like standard. The Supreme Court of the United States and this court specifically has held multiple times that the standard to prove commonality is that we have to put forth common contentions such that an assessment of their claim in one stroke. All you need is one such contention. Here we have four. We have four contentions. The contentions are the defendants did not pay what's called spread of hours compensation when workers worked more than 10 hours in a day. That's a New York-specific law. The second contention is that they did not pay money for the cost of maintaining uniforms. The third contention is that they did not pay proper overtime compensation. And the fourth contention is that they collected service charges and did not remit them to the clients, I'm sorry, to the workers. Now, the truth or falsity of each one of these four contentions will resolve central issues to these claims. For example, if it's determined that the defendant did in fact pay spread of hours compensation, this will resolve this issue. However, the standard does not require us to first prove that the defendants did not in fact pay spread of hours. That, in order for commonality to be satisfied, that's a standard for summary judgment or for trial. But nevertheless, we did submit records and evidence to prove the truthfulness of our contentions. For example, we submitted documents that were produced for all four clubs. That is in the record, record 1874 to 99 and also record 1873. And that's just an example. We submitted interrogatories for all the clubs. That is record 1239 to 53 as an example. We also submitted a detailed breakdown of the claims from each of the clubs and also a calculation of their damages. And that's record 1495 to 1496. We also interviewed over 250 workers from all the clubs, over 100 workers from just the Harbor Links Club alone, and we also interviewed customers from these clubs to understand what a reasonable customer was led to believe. Now, all of this is in the record. We submitted all of this to the court. The court considered our investigation and considered the evidence that was before the court, and then the court analyzed whether the contentions that we had put forth are the type that are considered common because they are apt to drive resolution on a class-wide basis and found that they indeed were. And that's why the court granted approval of the settlement and found commonality. Now, just to note what the objectors have just now claimed about the reference to our increasing scope of our investigation and somehow how that is somehow wrong, this case is over six years old. The first settlement was reached four or five years ago. Are we supposed to sit on our hands this entire time? If this settlement falls apart and we have to continue litigating this case, active litigation of this case is our requirement, and there's absolutely nothing wrong. We proceeded with this case as we must, and we actively continue to investigate it. Now, with respect to the second issue, the court's valuation of the settlement. Now, the court valued the settlement in three time periods. The court referred to it as buckets. We have the first bucket, which is the pre-2011 time period where the burden is on the plaintiffs, it's on the employee, to show that a reasonable customer would have believed that the service charge was a gratuity. So the burden's on the employee for the first bucket. The second bucket is the post-2011 time period where the burden shifted to the employer to show that a reasonable customer would not have believed that the service charge was a gratuity. So it's a much easier case to prove. And then there's a third bucket, is the time period after the contract language was changed, when the employer added a disclaimer specifically stating that the service charge is not a gratuity and will not be passed on to the servers. Now, despite what the objectors are now claiming, that the court somehow did not understand that the settlement did not put value on this third bucket. But the court actually had two oral arguments on this specific issue, and then we submitted case law to the court on this issue, and then the court detailed its analysis in its decision addressing this issue. Two professional mediators have also addressed this issue, and the parties are all in agreement. There is no value in this third bucket. The case law is very clear on this. The Ahmed case is an appellate decision case in the First Circuit, I'm sorry, I'm sorry, excuse me, in the First Department, it's an appellate specifically held that when the language is put in the contract, then a reasonable customer is put on notice and cannot possibly be confused. And the other requirements of the regulation that objectors are referring to are not relevant, because once it's in the contract, any reasonable customer is on notice. Objectors have tried to distinguish this case by saying, well, in the Ahmed case, there was also billing detail that was in the contract, and so it's somehow distinguished. Well, actually, this distinction only shows a further analogy, because in our case, in the Harbor Links contract as well as the other contracts, the billing information is also in the contract. So actually, it's completely analogous on all fours. But that's not even the important part. Other cases have supported this Ahmed case and said, as long as it's in the contract, that's enough to put a reasonable customer on notice so that nobody can possibly be confused, and have granted summary judgment over and over on this case, on this issue. And there's absolutely no abuse of discretion here when the Court has adapted the case law that is applicable to these claims. Now, with respect to the last issue, and one more thing, with respect to some double counting, which has just been referenced by Objectors Counsel, there was no double counting of devaluation from what I understand that was just raised. The Court was explaining that while the Harbor Links group may have an easier time proving Bucket 1, their Bucket 2 is smaller, because they changed their contract language sooner. And so overall, we don't care about Bucket 3. That's not valued. Overall, the Bucket 1 and Bucket 2, Bucket 2 is the most valuable. Everybody knows that. But they have one year shorter of it. But overall, it balances out. So may they have a better time proving Bucket 1, Bucket 2 is shorter. So overall, it's equal. That's what the Court was referring to. There's no double counting of damages here. Now, the last issue is some issue that Objectors have constantly been raising regarding collusion. Our case was filed 10 months before theirs. We did not go around them. They filed their case 10 months after us. The people they're seeking to represent want absolutely nothing to do with them. They've signed declarations saying that. We represent 92% of the people they're trying to represent. Now, they were involved in these negotiations. Judge Kaplan, who is a retired judge, all the negotiations went through him. And Counsel Gifford has submitted a declaration purporting to be from personal knowledge about how they were excluded from this mediation. Ms. Gifford was not at the mediation. I was at the mediation. And Judge Kaplan spent the vast majority of time with the Objectors. And after the mediation, all negotiations went through Judge Kaplan. And then Judge Kaplan submitted detailed reports to the Court detailing how he was involving the Objectors. So for them to now claim that there's collusion or how they were somehow excluded from the mediation is absurd. And on top of that, if they do not like the settlement, they could have just opted out and proceeded individually, because the people they're trying to represent do not want their representation. And it's fairly obvious what the motivations are of the Objectors and their counsel, because they're filing this appeal claiming, taking issue with the settlement and saying that they weren't involved in the negotiations, where at the same time, they filed another brief in the District Court claiming attorneys' fees, saying that the settlement was the result of their good work. I mean, I believe the motivations are clear. The settlement is good. It has overwhelming support. And there was absolutely no abuse of discretion by this District Court judge, who rigorously analyzed these factors, found that the settlement was overwhelmingly supported by the class, and found that it was fair and reasonable. And, Your Honors, if there are any other issues that I can address, please let me know. All right. Thank you, Ms. Hewitt. Thank you. Record for rebuttal. Thank you. I will try to address these points briefly. First of all, with respect to factual issues that could be common, we don't have anything in the record showing that the way these policies were enacted at these different locations across the State were the same. Simply pointing to the statute and saying You contend that they were not the same? We contend the record is not sufficient to find that they were the same, that there's nothing in the record. In fact, the only thing in the record is a letter from Plaintiff's Record on Appeal 1496 that specifies various differences, that Tanterra did it differently because they scheduled differently or because policies applied at different times. The only thing in the record is showing differences. You're saying legal questions don't count for determining commonality? Not if all you're pointing to is the provision of law and saying they violated this statute. You have to show more I'd feel a connection to the class members. Correct. You have to show that you can't just name a statute that is common. With respect to the interviewing of employees, again, the point there is what was the actual discovery and investigation done that was used for purposes of coming up with this settlement? I think, again, the timeline is clear. There were 40 employees who'd been interviewed at the time of the second settlement. That's in 2000, I believe, 18, May of 2018. So, you know, to, again, look back at the history of this litigation, there was ample time. At that point, clearly these interviews were done for purposes of bolstering support of the settlement. With respect to the buckets of damages, to the extent the district court did understand that there was zero value being assigned to the third bucket of damages, that in itself was error. We have shown there is value to those claims. There is, at the very least, an argument, and we think a strong argument that could succeed on summary judgment. We distinguish in our papers, and we continue to distinguish, both the Ahmed and the Amorum cases that plaintiffs are relying on when they say that New York courts have reversed this language. In those cases, the documents at issue were different than the documents we have. In Ahmed, there was a single document, a banquet event order, that included the contract and the bill. And what the Court was rejected as saying that other documents generated in connection with the event, such as proposals, did not have to have that language. Similarly, in Amorum, the required language was in the offer letter and the banquet conditions and terms contract, and the plaintiffs there made no argument that the language was lacking in other documents. Our documents include invoices, lunch menus, event detail sheets, and the precise language of the regulation says that language shall be included in the statement, in the contract, and in any, quote, menu and bill listing prices. The regulation requires it in menus. We have shown menus. The two cases that plaintiffs are relying on do not address menus. The regulations are clear. On these documents, these are strong claims. They've been assigned, admittedly, zero value. In addition to that, the District Court did look at that to say that the timing in the contract change was a reason to devalue the Harbor Links claims. Again, to the extent what they are classifying and what the District Court classified as, quote, total damages didn't include that bucket three, then there's no reason to take that bucket three into consideration when you're valuing the total damages. You've already done it. You already took that out. Finally, with respect to the collusion allegations, I would just note, again, this is addressed in our brief. You know, this is a case where we had pointed to the behavior of plaintiff's counsel early in this litigation when there had been representations that they would provide information. They ceased providing information. Instead, they took these, admittedly, New York State and federal actions and moved them to the District of Texas. The District Court, in its findings, found that that venue was inconvenient to the plaintiffs, inconvenient to the class members, but it found that for purposes of awarding class counsel's attorneys fees. There's nothing unusual about having a lawsuit in the location where a defendant's headquarters are. I mean, maybe New York was a better forum, but there's nothing unusual about suing where the defense is. No, but when you already have existing litigation there and you're using it as a vehicle to move that litigation, to move it away from the employees, to move these New York State law claims— Well, of course you want to consolidate it in one place, or else you're not going to get a settlement if there's no finality. But, again, the District Court found it was inconvenient to plaintiffs' counsel, and yet they agreed to it. Again, we're talking about New York State wage and hour claims interpreting New York State regulations. There's a lot of interest in having that all in New York State. And also, this was a settlement class, which there's even less reason to worry about where it takes place. Other than to the extent the case law does say you worry about collusion in that context, you worry about the fact that when you're certifying a class for settlement purposes, that class is not going to be tested with further litigation. You've got to show more to justify accusing somebody of collusion. Well, I understand your position, Your Honor. But, again, I would note that the District Court did say that it was an inconvenient— If I may just briefly on the— Your time has expired, Ms. Gifford, and your case is under submission. Thank you. The case for today, Hildebrandt v. Unum Life Insurance Company of America.